IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2005 Session

## MELINDA DIANE ANDERSON (BYRD) v. DONALD MATTHEW ANDERSON, SR.

**Appeal from the Circuit Court for Davidson County**
**No. 93D-822    Muriel Robinson, Judge**

---

**No. M2004-00078-COA-R3-CV- Filed August 23, 2005**

---

In this extended post-divorce battle over child support, alimony, property division and various other imaginative issues, the trial court granted summary judgment to the defendant. The judgment of the trial court is vacated, and the cause is remanded for trial of specific issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

John Banks Link, Nashville, Tennessee, for the appellant, Melinda Diane Anderson Byrd.

Charles Hill Beaty, Gallatin, Tennessee, for the appellee, Donald Matthew Anderson, Sr.

### MEMORANDUM OPINION[1]

This runaway train ran through three trial judges, two special masters, a special trial judge and 10 lawyers before crashing into the docket of the Court of Appeals. The engine started its arduous journey through the trial court on October 25, 1993, with a Decree of Divorce and ended its trial court journey a decade later on December 8, 2003. During the interim the children of the parties reached adulthood, but the parties, apparently fascinated by the courtroom, have continued

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

their unceasing strife wearing out lawyers and judges alike. We will spare the reader the exhaustive journey through eight volumes of pleadings and orders purporting to dispose of issues which somehow spring to life again and again.

Finally, in the tenth year of the journey on June 23, 2003, Judge Muriel Robinson ordered the former wife, Melinda Diane Anderson (Byrd) to file an amended petition specifically setting forth:

A. The exact amount of the "flat" rate child support arrearage.

B. The exact amount the Respondent allegedly owes for the children's medical expenses.

C. The exact amount of alimony arrearage.

D. The exact amount that petitioner claims she is owed for "overtime pay" child support.

The same order gave the former husband, Donald Matthew Anderson, Sr., thirty (30) days within which to file a responsive pleading.

In response to this apparent effort by the trial court to zero in on the issues still pending, the former wife, now rejuvenated by the appearance of yet another attorney on July 29, 2003, filed an Amended Petition seeking to relitigate everything since October 25, 1993.

At this point, the trial judge appointed Honorable Jack Norman, Jr. as special master and on August 22, 2002, referred the matter with instructions: "The Special Master shall do all things as may be necessary, and conduct all hearings as may be necessary, to enable him to make findings of fact, recommendations and conclusions of law to the court as to the resolution of all pending issues."

On October 9, 2003, the former husband, now reinvigorated by the fresh blood of new counsel, filed a Motion for Summary Judgment asserting as grounds:

(1) Child support must be for a specific amount.

(2) All allegations of contempt are barred by the applicable **statute of limitations**;

(3) All allegations are barred by previous decisions of the court that are now the **law of the land**.

(4) All allegations are barred by previous decisions of the court that are now **res judicata**.

(5) All allegations regarding payment of money are barred because of **accord and satisfaction**.

(6) The request for the Lionel train is between the Defendant and his son and the Plaintiff has **no standing** to bring said action.

(7) It would be **double jeopardy** to continue said contempt action in front of Judge Robinson after witnesses were called and proof was heard by Judge Gayden.

This totally unsupported Motion for Summary Judgment asserting six propositions entirely dependent upon consideration of facts, whether undisputed or not, fails any semblance of compliance with Tennessee Rule Civil Procedure 56. It is supported by no Statement of Undisputed Material Facts as required by Rule 56.03.

At this stage of the case we have an Amended Petition filed July 29, 2003, which is completely unresponsive to the June 23, 2003, Order of the court. Instead of a Motion to Strike or Otherwise Limit the Scope of Issues to be drawn under the Amended Petition, we have no responsive pleading filed by the defendant, but instead, a totally insufficient Motion for Summary Judgment. The next action is on November 21, 2003, when Substitute Judge Jack Norman, Jr. conducted a hearing "upon the Amended Petition of former wife for contempt and modification, upon motion of former husband for summary judgment, and upon the voluminous record in this case."

What, if anything, was heard before the special judge on November 21, 2003, we have no way to know, as such a hearing is mentioned neither in brief nor in the voluminous record. Since the hearing was on a summary judgment motion, it would seem logical that no proof would have been heard and the determination of the merits of the Motion would be made by the special judge from the record made before him. While the decision of the special judge entered December 8, 2003, and simultaneously approved and concurred in by Judge Robinson may be correct as to a number of the issues raised by the Amended and Supplemental Petition, such issues are hardly "reachable" in the absence of a responsive pleading and a properly supported Motion for Summary Judgment.

Two of the issues are clearly inappropriate for summary judgment under the present record. The Final Decree of Divorce gave the former wife 40% of former husband's BellSouth retirement benefits valued as of October 25, 1993. Subsequently, he withdrew $104,000 from his retirement accounts without sharing the withdrawal with his former wife. She claims she is entitled to 40% of this withdrawal. The record before us provides not a clue as to what effect, if any, the $104,000 withdrawal had on the wife's 40% of value as of October 25, 1993. If it did have an adverse effect on her 40% interest, she states a claim. If not, she is entitled to no relief. This factual issue has to be developed by evidence before it can be resolved.

The Decree of October 25, 1993, set child support according to the Guidelines based upon former husband's regular income. It further set an additional amount of "floating" child support based upon his overtime pay. Such action is clearly not in conformity with the statute, and the

special judge so held. He determined that this "floating" child support was fatal to the former wife's claim for overtime child support. Such is not the case. Overtime and other variable income are not exempt from child support, but clearly envisioned by the Guidelines. The error made by the trial court in this case does not inure to the benefit of the former husband in such a manner as to absolve him of all obligations of child support as to such variable income. This Court has held:

> Finally, Husband argues that the trial court erred when it ordered him to pay a percentage of his variable income in the form of bonuses. Specifically, Husband contends that such an award is in contravention with the Tennessee Child Support Guidelines. The Guidelines define gross income as the following:
>
> (3) Gross income.
>
> (a) Calculation of Gross Income.
>
> 1. Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment.
>
> Tenn. Comp. R. & Regs. R. 1240-2-4-.3(3)(a)(1). The rule further states that "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., *shall be averaged and added to the obligor's fixed salary.*" Tenn. Comp. R. & Regs. R. 1240-2-4-.03(3)(b). Although the Guidelines do not prescribe how variable income should be averaged, the Guidelines, in discussing the initial child support award, and Tennessee courts, in discussing averaging variable income, exhibit a preference for long-term averaging as the most appropriate method for calculating income that is variable in nature. *Hanselman*, 2001 Tenn. App. LEXIS 166, at *10-12 (citing *Alexander v. Alexander*, 34 S.W.3d 456, 464-65 (Tenn.Ct.App.2000); *Norton v. Norton*, No. W1999-02176-COA-R3-CV, 2000 WL 52819, at *7 n.7 (Tenn.Ct.App.Jan 10, 2000); *Stacey v. Stacey*, No. 02 A01-9802-CH-00050, 1999 WL 1097975, at *4 (Tenn.Ct.App. Oct. 6, 1999); *Smith v. Smith*, No. 01 A01-9705-CH-00216, 1997 WL 672646, at *3 (Tenn.Ct.App. Oct. 29, 1997); *Bell v. Bell*, No. 01-A01-9511-CH-00493, 1996 WL 548150, at *1 (Tenn.Ct.App. Sept. 25, 1996)).
>
> In this case, the trial court ordered Husband to pay child support based upon Husband's base salary of $105,000. The trial court then ordered Husband to pay 41% of any bonuses Husband earned within thirty days of receiving such bonus. Such "floating" child support awards are inconsistent with Tennessee's Child Support

Guidelines and Tenn.Code Ann. § 36-5-101(a)(2)(A) which requires trial courts to fix "some definite amount" for child support payments. Therefore, we reverse the child support award and remand for a redetermination of child support based on an average of Husband's gross income over a long term period that includes the bonuses Husband has earned in the average.

*Schuett v. Schuett*, 2004 WL 689917, Tenn.Ct.App.(2004). *See also* Tenn.Code Ann. § 36-5-101 (Supp. 2004).[2]

The proper remedy in the case at bar, as evidenced in *Schuett*, is to recalculate the husband's variable income and apply the appropriate percentage for child support to the resulting average. Viewing this record in its entirety through the years, one is compelled to observe that the former husband's conduct has been egregious in attempting to raise every conceivable obstacle to a proper judicial resolution of the issues in this case. Not to be outdone, the former wife responds in kind. However tedious the proceedings on remand must be, the first order of business is for the former husband to file an appropriate responsive pleading to the Amended Petition of July 29, 2003. Such a response should narrow the issues made by the Amended Petition, which itself was unresponsive to the trial court's Order of June 23, 2003. Thereafter, the trial court can adjudicate such factual issues as are actually made and summarily dispose of such issues as are not subject to legitimate factual dispute.

Tennessee Code Annotated section 27-3-128 provides:

**27-3-128. Remand for correction of record.** — The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

This case is remanded to the trial court with instructions that counsel for the defendant file a proper responsive pleading to the July 29, 2003 Amended Petition of former wife, rather than a totally unsupported Motion for Summary Judgment. Thereafter, the issues must be addressed in a manner that some sense can emerge from this quagmire.

The judgment of the trial court is vacated, and the case is remanded for further proceedings consistent with this opinion.

Costs of this cause are assessed against the appellee, Donald Matthew Anderson.

---

[2]Tenn.Code Ann § 36-5-101 has been amended by 2005 Tenn. Pub. Acts ch. 287, eff. July 1, 2005. The language of Tenn.Code Ann. § 36-5-101(a)(2)(A) is unchanged.

_____
WILLIAM B. CAIN, JUDGE